IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| Lisa Kesler, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER GRANTING MOTION FOR** |
| | ) | **PARTIAL SUMMARY JUDGMENT** |
| vs. | ) | **AND DENYING MOTION FOR** |
| | ) | **SANCTIONS** |
| Auto-Owners Insurance Company, | ) | |
| | ) | Civil No. 3:06-cv-79 |
| Defendant. | ) | |

Before the Court are a Motion for Partial Summary Judgment and a Motion for Rule 11 Sanctions filed by Defendant, Auto-Owners Insurance Company ("Auto-Owners") (Docs. #10, #12). Plaintiff Lisa Kesler has filed briefs in opposition to both motions (Docs. #16, #17). The Court has carefully considered the briefs and documents filed by the parties and now issues this memorandum opinion and order.

## SUMMARY OF DECISION

The Court concludes Kesler cannot bring a direct action against Auto-Owners to recover damages for the negligence of its insured, and therefore Auto-Owners' Motion for Partial Summary Judgment is GRANTED. However, the Court finds that Kesler's counsel made a nonfrivolous argument for the permissibility of a direct action based on existing law in North Dakota and other jurisdictions, so Auto-Owners' Motion for Rule 11 Sanctions is DENIED.

## FACTUAL BACKGROUND

On April 25, 2003, Plaintiff Lisa Kesler and Gerald Thompson were involved in a motor vehicle accident in Fargo, North Dakota. Kesler and Thompson were the drivers, and apparently the sole occupants, of their respective vehicles. At the time of the accident, both Kesler and

1

Thompson were insured by Defendant Auto-Owners Insurance Company. Kesler was insured under a motor vehicle policy issued to Cynthia Kesler by Auto-Owners. Thompson was insured under a motor vehicle policy issued to him by Owners Insurance Company, a subsidiary of Auto-Owners. Kesler suffered injuries in the accident, and Thompson died the next day. Sometime after the accident, Kesler filed an application for no-fault benefits under her policy with Auto-Owners.

On August 29, 2006, Kesler brought a civil action against Auto-Owners in Cass County District Court. Auto-Owners removed the action to this Court on the basis of diversity jurisdiction. Kesler is a citizen of the State of North Dakota, and Auto-Owners is a corporation organized under the laws of the State of Michigan, with its principal place of business located in Lansing, Michigan.

Kesler's Complaint against Auto-Owners sets forth two causes of action. In Count One, Kesler alleges that Auto-Owners acted in bad faith with regard to her claim for no-fault benefits under her insurance policy and wrongfully denied payment of medical expenses for treatment of her injuries. In Count Two, Kesler alleges that Auto-Owners is liable for damages caused by the negligence of its insured, Gerald Thompson, up to the limits of Thompson's liability insurance.

## DISCUSSION

Auto-Owners has moved for partial summary judgment as to Count Two of Kesler's Complaint, arguing that North Dakota law does not permit Kesler to bring a direct action against an insurance company for the negligence of its insured. Auto-Owners has also filed a motion requesting that the Court sanction Kesler's counsel for refusing to voluntarily withdraw the direct action claim in Count Two.

## I. Motion for Partial Summary Judgment

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The burden is on the moving party to establish the basis for its motion. Donovan v. Harrah's Md. Heights Corp., 289 F.3d 527, 529 (8th Cir. 2002). It is axiomatic that the evidence is viewed in a light most favorable to the nonmoving party, and the nonmoving party enjoys the benefit of all reasonable inferences to be drawn from the facts. See, e.g., Vacca v. Viacom Broad. of Mo., Inc., 875 F.2d 1337, 1339 (8th Cir. 1989) (quotations omitted). If the moving party shows there are no genuine issues of material fact, the burden shifts to the nonmoving party to set forth facts showing a genuine issue for trial. Donovan, 298 F.3d at 529.

A fact is "material" if it might affect the outcome of the case, and a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The basic inquiry is whether the evidence presents a sufficient disagreement to require full consideration on the merits by a jury, or whether it is so one-sided that one party must prevail as a matter of law. Diesel Mach., Inc. v. B.R. Lee Indus., 418 F.3d 820, 832 (8th Cir. 2005).

When the unresolved issues in a case are primarily legal rather than factual, summary judgment is particularly appropriate. Mansker v. TMG Life Ins. Co., 54 F.3d 1322, 1326 (8th Cir. 1995). However, although summary judgment may be an appropriate and useful tool to avoid useless and time-consuming trials, "[it] should not be granted unless the moving party has established the right to a judgment with such clarity as to leave no room for controversy." Vacca, 875 F.2d at 1339 (citations omitted).

Here, Auto-Owners contends it is entitled to summary judgment on Count Two because Kesler is prohibited as a matter of law from bringing a direct action against an insurance company to recover damages for the alleged negligence of its insured. Kesler counters that a direct action is permitted in this particular case under a combination of statutory provisions and other North Dakota case law.

In support of her position that a direct action is permissible, Kesler points in particular to the case of James v. Young, 43 N.W.2d 692 (N.D. 1950). In James, the plaintiff was involved in a car accident while riding in a taxicab and suffered injuries. Id. at 695. The plaintiff filed a lawsuit seeking damages from the driver of the taxicab, the corporation that owned the taxicab, and the insurer of the taxicab. Id. Defendants argued the insurer was improperly joined in a damages action against the insured. Id. at 695-96. The North Dakota Supreme Court rejected that argument and held that the plaintiff's suit against the insurer could proceed, relying in particular on a Fargo ordinance in effect at the time which required all taxicab owners to provide an insurance policy "indemnifying those using such taxicab line and the public in general." Id. at 695-96, 698. The court stated that the ordinance gave a person injured in a taxicab a direct interest in the required insurance policy, which made the insurer directly liable to the injured person "on proof of the liability of the insured taxicab owner." Id. at 698. In reaching its holding that joinder was proper, the court also stressed the interest in avoiding a multiplicity of lawsuits. Id. at 699-700.

The James case has not been overruled, and in that sense, it is precedent upon which parties and courts may rely. However, James has limited value here because it does not reflect the modern approach of the North Dakota Supreme Court with regard to direct actions against insurers. Indeed, as early as 1968, the court appeared to be moving away from James. In Kuntz v. Stelmachuk, 136

N.W.2d 810, 822 (N.D. 1965), the court noted the limited holding of James, stating the case stood for the proposition that "where a policy of insurance to protect a public carrier indemnifies persons using a cab and the public in general and is not a protection to the owner of the cab, such insurance company may be joined as a defendant in the action."

In Shermoen v. Lindsey, 163 N.W.2d 738, 744-45 (N.D. 1968), the North Dakota Supreme Court moved even further away from the holding of James. The plaintiff in Shermoen was injured while playing on a rope which had been tied to a tree by a Fargo Park District employee. Id. at 740. The plaintiff sued the Park District on a theory of negligence and joined its insurer in the action. Id. The district court dismissed the insurer from the suit, and the North Dakota Supreme Court affirmed. Id. at 744-45.

In reaching this holding, the Shermoen court noted, "There is a general reluctance among Courts to permit direct actions by an injured party against the insurer." Id. at 744. The court reasoned that a direct action against an insurer may be permitted only by either the contract between the insured and the insurer, or a "so-called direct-action statute." Id. at 745. In the absence of either express or implied language in the statute authorizing a direct action, courts must look to the insurance contract. See id. at 744-45. The Shermoen court noted that North Dakota has no direct-action statute, and that it did not interpret the statute governing liability insurance for political subdivisions as authorizing direct actions. Id. at 745. The North Dakota Supreme Court ultimately held that the "no action" clause in the insurance contract governed, and therefore the insurer was improperly joined in the suit. Id.

The most recent North Dakota case addressing the issue of direct actions against insurers is Dvorak v. American Family Mutual Insurance Co., 508 N.W.2d 329 (N.D. 1993). In that case, Kim

Dvorak was injured when a vehicle was accidentally driven over her foot. Id. at 330. American Family was the insurer of that vehicle. Id. After settling their claim with American Family, Kim Dvorak and her parents sued American Family, alleging that its initial settlement offer was made in bad faith. Id. at 330-31.

The North Dakota Supreme Court held the Dvoraks were only incidental beneficiaries under the insurance contract, not intended claimants or third party beneficiaries. Id. at 331. Therefore, the Dvoraks had no contractual right under the policy to directly sue American Family, but rather only had a potential tort claim against the insured. Id. In its reasoning, the North Dakota Supreme Court stated, "Absent a clause in the insurance contract bestowing the right to bring a direct action against the insurer, an injured party's claim must be asserted against the tortfeasor, not the tortfeasor's insurer." Id. The court ultimately held that American Family owed no duty to the Dvoraks, who were third party claimants, to negotiate a good faith settlement. Id. at 332.

After a careful review of North Dakota law, the Court concludes Kesler may not bring a direct action against Auto-Owners to recover damages for the alleged negligence of its insured, Gerald Thompson. North Dakota has not enacted a statute permitting direct actions against insurers. The Court is not persuaded by Kesler's argument that the authority to bring a direct action may be implied under the North Dakota statutes requiring liability insurance for motor vehicles. See Polensky v. Cont'l Cas. Co., 397 F. Supp. 2d 1164, 1172 (D.N.D. 2005) (stating that "[t]he inability to bring a direct action against an insurer is well-established in North Dakota jurisprudence"). The Court has reviewed the cases cited by Kesler, particularly Raskob v. Sanchez, 970 P.2d 580 (N.M. 1998), and Shingleton v. Bussey, 223 So. 2d 713 (Fla. 1969), superseded by Fla. Stat. §

627.4137 (Lexis Nexis 2007). However, in light of North Dakota case law on the issue of direct actions against insurers, cases from other jurisdictions are much less persuasive.

Because there is no North Dakota statute authorizing a direct action against Auto-Owners, the Court must look to the insurance contract between Gerald Thompson and Auto-Owners.[1] Section VI, paragraph 4 of the insurance contract provides:

> No legal action may be brought against us until there has been full compliance with all the terms of this policy. Further, under the Liability Coverage no legal action may be brought until we agree a person entitled to coverage has an obligation to pay or until the amount of that obligation has been determined by judgement after trial. No one has any right under this policy to bring us into any action to determine the liability of any person we have agreed to protect.

Under the plain language of the insurance contract, Kesler does not have the right to bring Auto-Owners into this action to determine the negligence of Gerald Thompson, its insured. Kesler contends she may directly sue Auto-Owners because she is a third party beneficiary of the contract, but that argument is foreclosed by Dvorak. Kesler is only an incidental beneficiary of Thompson's insurance contract, not an intended claimant or a third party beneficiary.

In further support of her position, Kesler argues it would be a waste of judicial resources to require her to bring a separate action to determine the negligence of Gerald Thompson, when Auto-Owners will be ultimately liable under the insurance policy. However, the issue of Thompson's negligence is a separate question from the issue of whether Auto-Owners acted in bad faith under its insurance policy with Kesler. See St. Paul Fire & Marine Ins. Co. v. Mannie, 91 F.R.D. 219, 221

---

[1] The Court notes that two pages are missing from Auto-Owners' submission of the insurance policy held by Gerald Thompson (Doc. #11-6). Specifically, pages 2 and 3 of the North Dakota No-Fault Insurance Endorsement are missing. However, the policies of Gerald Thompson and Cynthia Kesler (Doc. #11-7) are nearly identical, and Kesler's policy contains the same North Dakota No-Fault Insurance Endorsement. Therefore, the Court believes it has seen the substance of the two missing pages. At any rate, Thompson's policy as submitted to the Court does contain the "no action" clause at issue here, and Kesler's counsel has not pointed to any provisions in the insurance policy which would permit a direct action against Auto-Owners.

(D.N.D. 1981). Furthermore, North Dakota law prohibits Kesler's direct action against Auto-Owners, and a general interest in avoiding multiplicity of suits cannot overcome that law.

Finally, Kesler argues she must be permitted to bring a direct action against Auto-Owners for the negligence of Thompson under N.D.C.C. § 30.1-19-03. Kesler claims that § 30.1-19-03, which is the non-claim provision in North Dakota's version of the Uniform Probate Code, prohibits bringing a negligence action against Thompson's estate. Section 30.1-19-03 provides, in relevant part:

> 1. All claims against a decedent, including claims of the state or any political subdivision, whether due or about to become due, absolute or contingent, liquidated or unliquidated, founded on contract, tort, or other legal basis, if not barred earlier by other statute of limitations, are barred against the estate, the personal representative, the heirs and devisees of the decedent, and nonprobate transferees unless presented as follows:
>    a. Within three months after the date of the first publication and mailing of notice to creditors if notice is given in compliance with section 30.1-19-01; provided, claims barred by the non-claim statute at the decedent's domicile before the first publication for claims in this state are also barred in this state.
>    b. Within three years after the decedent's death, if notice to creditors has not been published and mailed.
> . . . .
>
> 3. Nothing in this section affects or prevents:
>    a. Any proceeding to enforce any mortgage, pledge, or other lien upon property of the estate.
>    b. To the limits of the insurance protection only, any proceeding to establish liability of the decedent or the personal representative for which the decedent or personal representative is protected by liability insurance.

The Editorial Board Comment to this section states, "Tort claims normally will involve casualty insurance of the decedent or of the personal representative, and so will fall within the exception of subsection 3."

8

Kesler argues N.D.C.C. § 30.1-19-03 prohibits her from bringing a negligence action against Thompson's estate because Thompson died more than three years ago. The Court reads the statute to reach the opposite result. Subsection 3 specifically provides that the non-claim statute does not prevent any proceeding to establish the liability of the decedent on a matter for which the decedent is protected by liability insurance, to the limits of that insurance protection. The Editorial Board Comment further supports this interpretation of the statute. The Court concludes that § 30.1-19-03 does not prevent Kesler from bringing an action against the estate to establish Thompson's liability in negligence, to the extent of his liability insurance. Kesler's argument that this statutory provision requires her to bring a direct action against Auto-Owners for the negligence of Gerald Thompson is misplaced.

In light of the foregoing analysis, the Court concludes Kesler cannot bring a direct action against Auto-Owners to recover damages for the alleged negligence of its insured, Gerald Thompson. Therefore, Auto-Owners' Motion for Partial Summary Judgment as to Count Two is GRANTED.

## II. Motion for Rule 11 Sanctions

Auto-Owners has also filed a motion requesting that the Court sanction Kesler's counsel for refusing to voluntarily withdraw the direct action claim. Specifically, Auto-Owners contends that Kesler's counsel has refused to follow clear North Dakota law.

Rule 11 of the Federal Rules of Civil Procedure provides that sanctions may be warranted in certain instances. Rule 11(b) provides, in relevant part:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,–

9

> . . . .
>> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law[.]

The Advisory Committee Notes on the 1993 Amendments of Rule 11 further explain this particular provision:

> Arguments for extensions, modifications, or reversals of existing law or for creation of new law do not violate subdivision (b)(2) provided they are "nonfrivolous." This establishes an objective standard, intended to eliminate any "empty-head pure-heart" justification for patently frivolous arguments. However, the extent to which a litigant has researched the issues and found some support for its theories even in minority opinions, in law review articles, or through consultation with other attorneys should certainly be taken into account in determining whether paragraph (2) has been violated. Although arguments for a change of law are not required to be specifically so identified, a contention that is so identified should be viewed with greater tolerance under the rule.

In this case, the Court is convinced that Kesler's counsel should not be sanctioned under Rule 11. Counsel's argument for the extension or modification of existing North Dakota law was nonfrivolous. Counsel relied on North Dakota case law, particularly James and Shermoen, and North Dakota statutes in support of his position that a direct action should be permitted under the facts of this case. Counsel also cited case law from other jurisdictions which supported his arguments that a direct action may be implied based on statutes mandating automobile liability insurance, and that an injured plaintiff may be a third party beneficiary of an insurance contract. Although the Court did not ultimately rule in Kesler's favor on the issue of a direct action, the Court finds that counsel's argument was made in good faith on the basis of existing law in North Dakota and other jurisdictions. Therefore, Auto-Owners' Motion for Rule 11 Sanctions is DENIED.

## **DECISION**

Auto-Owners' Motion for Partial Summary Judgment is **GRANTED**. Auto-Owners' Motion for Rule 11 Sanctions is **DENIED**.

**IT IS SO ORDERED.**

Dated this 28th day of November, 2007.

      /s/   Ralph R. Erickson
Ralph R. Erickson, District Judge
United States District Court